UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GERALD THOMPSON,

    Plaintiff,

vs.

OHIO DEP'T OF REHABILITATION
AND CORRECTION, et al.,

    Defendants.

Case No. 1:14-cv-935

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, an inmate at the Southern Ohio Correctional Facility, proceeding *pro se* and *in forma pauperis*, has filed a civil complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). Defendants now move for summary judgment, asserting *inter alia*, that they acted reasonably under the circumstances and are therefore entitled to qualified immunity.

    **I.**    **Background and Facts**

Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), brings this civil rights action under 42 U.S.C. § 1983. In his pro se complaint, as amended by a subsequent complaint filed on December 22, 2014, plaintiff names as defendants the Ohio Department of Rehabilitation and Correction (ODRC), SOCF's Warden, a "mental health" physician at SOCF, and four SOCF correctional officers: CO Sears, CO Henderson, CO Rush and CO Gilford. (*See* Doc. 1, pp. 1-2, at PAGEID#: 1-2; Doc. 5, p. 4, at PAGEID#: 40). By separate Order, plaintiff has been granted leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.

Plaintiff's allegations stem from two unrelated incidents. Plaintiff's Complaint, which is difficult to decipher, asserts a multitude of unrelated claims against several defendants spanning over a decade. (Doc. 11, Report and Recommendation, PageID # 99-100). Only his claims against Officers Rush and Henderson survived the Court's initial screening. *Id.* at PageID # 102. In this regard, Plaintiff alleges that Officer Rush sprayed him with pepper spray without justification. He also alleges that Officer Henderson harmed his wrists while he was handcuffed without justification and in retaliation for Plaintiff's recently filed grievances. (Doc. 1, PageID # 4, 17-20).

With respect to these claims, the record evidence is as follows:

On September 22, 2013, Officer Ryan Rush processed Plaintiff inmate Gerald Thompson into a holding cell temporarily to be transferred to "constant watch" under increased observation. (Doc. 69, Exhibit B, ¶¶ 5, 6, Exhibit C ¶ 3, Exhibit E, p. 1 [of 10]). Plaintiff inserted toilet paper into his ears and began yelling aggressively. (Doc. 69, Exhibit C ¶ 4, Exhibit B, ¶¶ 5, 6, Exhibit E, p. 1-2 [of 10]). Officer Rush ordered Plaintiff to remove the toilet paper from his ears; Plaintiff did not comply. *Id.*

Plaintiff began chanting in an unknown language except for the phrase "Die CO" which he yelled in English. (Doc. 69, Exhibit C ¶ 5, Exhibit B, ¶¶ 5, 6, Exhibit E, p. 1-2 [of 10]). Officer Rush gave Plaintiff two direct orders to turn around and face the wall of the cell; Plaintiff disobeyed. (Doc. 69, Exhibit C ¶¶ 5-6, Exhibit B, ¶¶ 5, 6, Exhibit E, p. 1-2 [of 10]). Plaintiff then began audibly and visibly "hocking up" spit and attempted to spit on Officer Rush. *Id.* Officer Rush deployed pepper spray on Plaintiff to prevent him from spitting on him. (Doc. 69, Exhibit C ¶ 6, Exhibit B, ¶¶ 5, 6, Exhibit

2

E, p. 1 [of 10]). Plaintiff declined the opportunity to use a decontamination shower and was instructed to use the sink to wash any affected area. As a result of this incident, Plaintiff was found guilty of four (4) institutional Rule violations.

Thereafter, on January 29, 2014, Officer Henderson was cleaning off feces that was expelled onto the K-4 block near cells 29 and 30. (Doc. 69 Exhibit B, ¶¶ 5, 6, Exhibit D ¶ 3 and p. 3). After notifying Correctional Officer Lieutenant Kaut that Plaintiff was going to be moved, Officer Stombock placed Plaintiff in handcuffs and leg cuffs. *Id.* Officer Henderson gave Plaintiff a direct order to back out of his cell. (Doc. 69,Exhibit B, ¶¶ 5, 6, Exhibit D ¶ 4 and p. 3). Instead, Plaintiff faced the officers and refused to back out. He also attempted to walk out facing forward rather than backing out as ordered by Officer Henderson. *Id.* Officer Henderson grabbed Plaintiff by his right arm and turned him around and then escorted him off the K-4 block range. *Id.*

After exiting the K-4 block range, Plaintiff grabbed Officer Henderson's right wrist. (Doc. 69, Exhibit B, ¶¶ 5, 6, Exhibit D ¶ 5, p. 3, Exhibit E, p. 6-7 [of 10]). In response, Officer Henderson applied pressure to Plaintiff's left wrist. (Doc. 69,Exhibit B, ¶¶ 5, 6, Exhibit D ¶ 5, p. 3). To further establish compliance, Officer Henderson verbally ordered Plaintiff to not make physical contact with Correctional Officers. (Doc. 69, Exhibit B, ¶¶ 5, 6, Exhibit D ¶ 6, p. 3). In the K block corridor, Plaintiff again grabbed Officer Henderson's wrist. *Id.* Officer Henderson again applied pressure to Plaintiff's wrist and verbally ordered him to cease physical contact. Id. Officer Henderson used no further force on Plaintiff. *Id.* As a result of this incident, Plaintiff was found guilty of two (2) institutional Rule violations. (Doc. 69, Exhibit B, ¶¶ 5, 6).

3

Plaintiff was sentenced to fifteen (15) days of disciplinary control as a result. *Id.* The ruling was affirmed by the Warden of SOCF. *Id.*

Plaintiff filed the instant action on December 8, 2014. (Doc. 1). This matter is now before the Court on Defendants motion summary judgment. (Doc. 69).

## II. Analysis

### A. Standard of Review

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 24748, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.,* 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party " 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.' " *Harris v. Adams,* 873 F.2d 929, 931 (6th Cir.1989) (quoting *Sixty Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615

(6th Cir.2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC,* 219 F.3d 547, 551 (6th Cir.2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street,* 886 F.2d at 1478 (citing *Celotex* and *Anderson* ). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323–24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir.1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street,* 886 F.2d at 1479–80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**B. Defendants motion for Summary Judgment**

Defendants' motion for summary judgment asserts that Plaintiff's action should be dismissed because: (1) he failed to exhaust his administrative remedies in compliance with the Prisoner Litigation Reform Act, (2) his claims are barred by the

Heck doctrine[1], (3) the force used against him was in pursuit of valid penological objectives and did not result in injury, and (4) Defendants are entitled to qualified immunity. Upon careful review, the undersigned finds that Defendants' motion is well-taken.

*A. Exhaustion*

Pursuant to the PLRA, prisoners are required to fully exhaust available institutional remedies prior to filing suit in federal court. See 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). *In Porter v. Nussle*, the Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 299, n. 1, 111 S.Ct. 2321, 115 L.Ed.2d 271

---

[1] In *Heck v. Humphrey*, the Supreme Court held that a plaintiff's claim for damages for a prior unconstitutional conviction or sentence, or other harm arising therefrom, is not cognizable under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the plaintiff can show that the underlying conviction or sentence was overturned. 512 U.S. at 486-87. However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487. (Emphasis in original). This holding is equally applicable to prison disciplinary hearings, the outcome of which affected the duration of a plaintiff's term of incarceration. *See Edwards v. Balisok*, 520 U.S. 641, 643 (1997); *Muhammad v. Close*, 540 U.S. 749, 751-52 (2004). Thus, several courts have found that *Heck* does not bar all Eighth Amendment claims whenever an inmate has been convicted of related disciplinary infractions. *See also Mitchell v. Craft*, 2015 WL 4743045 (S.D. Ohio Aug. 10, 2015)(denying summary judgment, rejecting Defendants argument that *Heck* would necessarily invalidate the plaintiff's underlying disciplinary convictions). In any event, as detailed below, Defendants are entitled to judgment as a matter of law on Plaintiff's claims.

6

(1991)). It has become well-established that "exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 201, 204 (2007).

The PLRA requires "proper exhaustion of all administrative remedies," meaning all applicable procedures and deadlines must be followed. *Woodford v. Ngo*, 548 U.S. 81, 88–90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2002) (emphasis added). The exhaustion requirement's goals can be achieved "only if the prison grievance system is given a fair opportunity to consider the grievance. That cannot happen unless the grievant complies with the system's critical procedural rules." *Id.* at 82. If a prisoner fails to exhaust available administrative remedies before filing a complaint in federal court, or only partially exhausts them, dismissal of the complaint is appropriate. *Hopkins v. Ohio Dep't of Corr.*, 84 Fed. Appx. 526, 527 (6th Cir.2003) (citing 42 U.S.C. § 1997e(a)); see also *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir.1997).

"Exhaustion may not be completed after a federal complaint has been filed." Hopkins, 84 Fed. Appx. at 527 (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999)). "In a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir.2011) (citing Jones v. Bock, 549 U.S. at 204).

The Ohio Department of Rehabilitation and Correction ("ODRC") offers a three-step grievance system to every inmate at each of its institutions. Ohio Admin. Code 5120–9–31(K) (2013) (West). All inmates and staff members receive a written

7

explanation of the grievance system and instructions for its use. § 5120–9–31(C).

The first step of the grievance procedure allows inmates to submit an informal complaint to the supervisor of the department or staff member directly responsible for the issue concerning the inmate, but requires any such complaint or grievance to be submitted no later than fourteen days from the date of the event giving rise to the grievance. OAC § 5120–9–31(K)(1).

Inmates dissatisfied with the results of step one may proceed to step two by obtaining a Notification of Grievance form from the Inspector of Institutional Services, and filing a formal grievance at the prison where the inmate is confined. § 5120–9–31(K)(2). Formal grievances must be submitted within fourteen days from the date an inmate receives a response to his informal complaint at step one. OAC § 5120–9–31(K)(2).

If dissatisfied with the results of his formal complaint at step two, the inmate may proceed to step three of the grievance process by requesting an appeal form from the Office of the Inspector of Institutional Services, and submitting an appeal to the Office of the Chief Inspector at ODRC. OAC § 5120–9–31(K)(3). The step three appeal must be filed within fourteen days of the inmate receiving a disposition to his formal complaint. OAC § 5120–9–31(K)(3). The Chief Inspector is to provide a written response within thirty calendar days of receiving an appeal, unless he extends the time frame for good cause and notifies the inmate. OAC § 5120–9–31(K) (3). Decisions of the Chief Inspector are final—meaning the Ohio Administrative Code provides no further means for appeal. OAC § 5120–9–31(K)(3).

8

Defendants seek judgment as a matter of law based upon Plaintiff's failure to timely and/or fully exhaust his administrative remedies within the prison grievance system before filing suit in this Court.

As noted by Defendants, Plaintiff was required to file an informal complaint at SOCF within fourteen "days of the date of the event giving rise to the complaint…." Ohio Adm. Code § 5120-9-31. Thus, Plaintiff should have filed his informal complaint for the September 22, 2013 incident on October 6, 2013; he should have filed his informal complaint for the January 29, 2014 incident on February 12, 2014.

Notably, during the period from May 1, 2013 to April 1, 2014, Plaintiff filed a total of thirteen (13) informal complaints at SOCF. Those informal complaints grieve of the adequacy of his mental healthcare and medications, his need to move to different cells, allegedly missing property, and his need for a "legal kite." Those informal complaints do not allege, describe, or allude to any instances in which force was used against him by a correctional officer or anyone else, nor do they allege any retaliatory act by a correctional officer or anyone else. (Doc. 69, Exhibit A, ¶ 8). Those informal complaints bear no factual commonality with the events that give rise to Plaintiff's present § 1983 lawsuit. *Id.*

Further, not one of those thirteen (13) unrelated informal complaints had a subsequent notification of grievance, the required second step of grievance process. *Id.* Accordingly, the record fails to establish that Plaintiff exhausted his administrative remedies.

In light of the foregoing, the undersigned finds that there is no issue of material

fact with respect to whether Plaintiff exhausted his claims and as such, Defendants are entitled to judgment as a matter of law.

*B. Plaintiff's Constitutional claims*

In order to maintain an action under 42 U.S.C. § 1983, plaintiff must allege that the person engaging in the offensive conduct was acting under color of state law and that this conduct deprived plaintiff of some right secured by the Constitution or laws of the United States. *Graham v. National Collegiate Athletic Ass'n,* 804 F.2d 953, 957 (6th Cir.1986) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986))

A prisoner may state an Eighth Amendment claim for excessive force under § 1983 by alleging that he or she has been assaulted by a corrections officer. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 833–34, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). However, a prison inmate must allege facts sufficient to show that he suffered a serious or grave deprivation or harm to state such a claim. *See Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

Here, Plaintiff has failed to establish any violation of his constitutional rights. Notably, Plaintiff has only submitted his own unverified complaint and amended complaint. He has not submitted any evidence establishing that he had been assaulted by a corrections officer and/or showing he sustained a physical injury as required by 42 U.S.C. § 1997e(e). As detailed above, summary judgment is

appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiff has failed to do so here.

Furthermore, "the good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment." *Parish v. Johnson,* 800 F.2d 600, 604 (6th Cir.1986). As the Supreme Court has explained, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. at 6–7; *see also Wilkins v. Gaddy,* 130 S.Ct. at 1178–1179 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.").

In making this inquiry, a court must consider (1) the need for the use of force, (2) the relationship between the need and the type and amount of the force used, (3) the threat perceived by the officials, (4) and the extent of the injury inflicted. *See Hudson*, 503 U.S. at 7.

Here, the evidence of record establishes on September 23, 2013, Officer Rush gave several orders to Plaintiff and Plaintiff failed to comply with such orders. Notably, instead of facing the wall of the cell, plaintiff attempted to spit on Officer Rush. As a result, Officer Rush deployed pepper spray on Plaintiff to prevent him from spitting on him. It is well established that Correctional Officers, without running afoul of the

11

Eighth Amendment, may deploy pepper spray when there is a credible threat that an inmate may attempt to project bodily fluids at officers. See *Thompson,* 2014 WL 1685918 *1-2, 8 ("in context, the brief use of spray employed by Defendant was arguably so objectively a 'de minimis' use of force as to fail to demonstrate an Eighth Amendment claim.").

With respect to Officer Henderson, the record established that Officer Henderson gave Plaintiff a direct order to back out of his cell. (Doc. 69, Ex. B, ¶¶ 5, 6, Ex. D ¶ 4 and p. 3). Plaintiff did not comply. *Id.* Officer Henderson grabbed Plaintiff by his right arm and turned him around and then escorted him off the K-4 block range. *Id.* After exiting the K-4 block range, Plaintiff grabbed Officer Henderson's right wrist. (Doc. 69, Ex. B, ¶¶ 5, 6, Exhibit D ¶ 5, p. 3, Exhibit E, p. 6-7 [of 10]). In response, Officer Henderson applied pressure to Plaintiff's left wrist. (Doc. 69 Exhibit B, ¶¶ 5, 6, Exhibit D ¶ 5, p. 3). Officer Henderson verbally ordered Plaintiff to not make physical contact with Correctional Officers. (Doc. 69 Exhibit B, ¶¶ 5, 6, Exhibit D ¶ 6, p. 3). In the K block corridor, Plaintiff again grabbed Officer Henderson's wrist. *Id.* Officer Henderson applied pressure to Plaintiff's wrist and verbally ordered him to cease physical contact. *Id.*

In light of the foregoing, the undersigned finds that Defendants Rush and Henderson used both necessary and *de minimis* force which resulted in no injuries to Plaintiff. Accordingly, Plaintiff has failed to establish any violation of his Eighth Amendment rights.

12

*C. Qualified Immunity*

Last, Defendants are entitled to qualified immunity because the evidence establishes that they acted reasonable under the circumstances. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz,* 533 U.S. 194, 200–201 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant,* 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341 (1986)). *See also Dorsey v. Barber,* 517 F.3d 389, 394 (6th Cir.2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson,* 555 U.S. at 231

Here, the record evidence clearly established that any use of force by Defendants was "applied in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 6-7. As such,

13

Plaintiff has failed to establish that he suffered a deprivation of any clearly established statutory or constitutional right that a reasonable official would understand violated the same. Therefore, the Defendants are immune from Plaintiff's claims for excessive force and are entitled to judgment as a matter of law.

### III. Conclusion

For these reasons, **IT IS THEREFORE RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 69) be **GRANTED,** all pending motions be **DENIED as MOOT** (Doc. 59, 78) and this case be **TERMINATED** on the active docket of the Court.

                                              *s/ Stephanie K. Bowman*
                                              Stephanie K. Bowman
                                              United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GERALD THOMPSON,
    Plaintiff,

vs

OHIO DEP'T OF REHABILITATION
AND CORRECTION, et al.,
    Defendants.

Case No. 1:14-cv-935

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. See *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).